THE COUNTY COMMISSIONERS OF KENT COUNTY
*vs.* ALBERT GODWIN.

*Highways and Streets—Raising Grade of Public Road so as to Obstruct Flow of Surface Water From Abutting Land—Liability of County Commissioners.*

County Commissioners are not bound to construct and repair public roads in such manner as to drain the adjacent lands, but they are required to execute all of their work upon the roads with reasonable care and if they through negligence and carelessness in the construction of a road,

or of the ditches and drains made a part thereof, injure the adjacent land, they are liable in damages therefor.

When County Commissioners raise the grade of a public road they are under no obligation to provide and maintain adequate means for the flow of surface water from the land of an abutting owner, which water had been accustomed to flow over and across the road.

The natural flow of the surface water from plaintiff's land lying on the north side of a public road was south across the road. The County Commissioners in improving the road so raised its grade as materially to obstruct the flow of this surface water which, after heavy rains, was backed up on plaintiff's land. The plaintiff had himself previously constructed a private way and ditch on his land which had accumulated the water and thrown it upon the public road. In an action against the County Commissioners to recover damages for the injury so caused by the raising of the grade of the road, *held*, that even if the construction by the plaintiff of the private way had caused some of the overflow of, and injury to, his land that would not prevent him from recovering damages for the additional overflow caused by the independent act of the defendants, provided the change in the grade of the road made by them was done negligently, but since there is no evidence of negligence in the way the work was done the plaintiff is not entitled to recover.

*Held*, further, that the fact that the plaintiff worked as a hired laborer in repairing the road does not show that he consented to the raising of the grade.

Appeal from the Circuit Court for Kent County (PEARCE, C. J., MARTIN and BROWN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*John D. Urie* (with whom was *Sydney P. Townshend* on the brief), for the appellant.

*James P. Gorter* and *Hope H. Barroll*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This suit was instituted, in the Circuit Court for Kent County, by the appellee against the appellant to recover damages for an alleged injury to his land caused by repairing an adjacent road in such manner as to obstruct the natural flow of the surface water from the land.

The declaration in the case, as finally amended ·contains two counts. The first count alleges that it is the legal duty of the defendant to keep the public roads with their bridges in good repair and that in grading and draining the public road leading from Chestertown to Millington it diverted the surface water of the plaintiff's land from its natural course and caused it to flow back and accumulate upon the land and injure it. The second count is as follows: "2. And for that the defendant in attempting to divert the natural flow of surface water over and from the plaintiff's land and negligently and carelessly constructed and built a drain or tile at the corner of said land of plaintiff, described in the first count of this declaration across the public road at or near the plaintiff's gate, which failed properly to drain the land of the said plaintiff and caused said water to back and accumulate upon plaintiff's land and thereby injure the land of said plaintiff and caused the plaintiff a great loss and damage."

The defendant pleaded the general issue to the first count of the declaration and demurred to the second count. The Court overruled the demurrer and the defendant then filed amended pleas to the whole declaration setting up *first*, the general issue, and *secondly*, that the work done and the repairs made upon the public road, complained of were done and made with the plaintiff's consent.

We think the demurrer to the second count of the declation was properly overruled. While that count cannot be said to have been drawn with great technical skill or precision it does aver that the defendant so *carelessly* and *negligently* constructed and built a tile or drain across the public road at the corner of the plaintiff's land as to cause the surface water to back and accumulate upon the land and injure it. Although County Commissioners are not bound to so construct and repair public roads as to drain the adjacent lands, they are required to execute all of their work upon the roads with reasonable care and if they, through *negligence* and *carelessness* in the construction of the roads, or of the ditches and drains which they introduce into and make part thereof, in-

jure the adjacent lands they will be liable in damages to the owners of such lands. The reasons for our views upon this branch of the case will become apparent further on in this opinion in the discussion of the propriety of the rulings of the Circuit Court upon the prayers.

There is evidence in the record tending to show that the natural flow of surface water from the plaintiff's land, which lies on the north side of the public road, is south toward and across the road and that the commissioners in constructing a tile drain across the road underneath its surface had so raised the grade of the road as to materially obstruct the flow of this surface water and to back it up on the plaintiff's land after every heavy rain, and impair its fertility and diminish its value. There is other evidence tending to show that the natural drainage of this land was west or southwest and that the plaintiff himself, by constructing a raised private road extending northerly from the public road to his residence on a hill and cutting a ditch along the east side of the private road, had intercepted the natural flow of the surface water and accumulated it and thrown it down upon the public road in such quantities as to make it impassable at times to foot passengers, and to cut gullies in it a foot deep. The road supervisor under whose direction the tile was run across underneath the road testified that it had been put there in an effort to relieve the road from the water thrown on it by the plaintiff's ditch. There is no evidence in the record tending to prove an invasion of the plaintiff's premises by throwing upon them surface water collected from other land, or the creation of a nuisance by accumulating on the public road in front of his lot water from other lands than his which had been diverted thither by changing the grade of the road.

There is but one bill of exceptions in the record and that brings up for review the action of the Circuit Court in granting the plaintiff's first prayer and rejecting the defendant's third and seventh prayers.

The Court below were clearly right in rejecting these two prayers of the defendant. The first one asserts the proposi-

tion that even if the jury believe that the injury to his land complained of by the plaintiff were caused by the work done and repairs made by the defendant upon the adjacent public road, he cannot recover if he assisted in making the repairs and executing the work and knew or ought to have known that the injuries would result therefrom. The only evidence in the record upon that subject is that the plaintiff worked as a laborer for hire along with others in the employment and under the direction of the road supervisor in repairing the road in front of his land. As a mere employee he was bound to obey the directions of his employers and cannot be held responsible for the plan or scheme of construction adopted by them for repairing the road nor for its execution under their direction and supervision.

The other rejected prayer of the defendant asked the Court to rule that, if the jury found that the elevation of the private way of the plaintiff, extending through his land, deflected the flow of the surface water and caused the overflow of the land, then the plaintiff could not recover for any injury caused by the water to that part of his lands located near the private way, even though the jury found "that the accumulation of the water on said land was increased by wrongful acts of defendants agents." This prayer seems to have been drawn upon the theory that if the act of the plaintiff in constructing his private way caused some overflow of and injury to his land his conduct in that respect must be regarded as contributing to cause the further overflow and damage occasioned by a distinct and entirely independent tortious act done by the defendant. In other words the prayer sought to apply the doctrine of contributory negligence to the case. That doctrine relieves a defendant from liability for a particular injury when the plaintiff has so far contributed to the same by his own negligence that but for such negligence the injury would not have occurred. It has no application to a state of facts such as is set forth in this prayer. There can be no question that where a defendant by *wrongful acts* causes surface water to back up and accumulate upon a plaintiff's land in greater

quantities than were there before and thereby injures the land he becomes liable to the plaintiff for the damage caused by such additional accumulation of the water, just as he would be liable for the direct results of any other tort committed by him.

We are of opinion that the learned Judges below erred in granting the plaintiff's first prayer which is as follows: "If the jury shall find from the evidence that the natural flow of the surface water from the plaintiff's land at the *locus in quo* was over and across the bed of the public road and that in working and repairing said road the defendant so raised the road-bed of the same as to prevent or obstruct said flow, then it was the duty of the defendant to provide and maintain proper ditches for the passage of said water, and if said ditches were so constructed or maintained as to back up said waters upon plaintiff's land then the plaintiff is entitled to recover for such damages as the jury shall find he suffered thereby."

This prayer is erroneous in not requiring the jury to find that the repairs to the road, which so elevated its bed as to obstruct the flow of the surface water from the plaintiff's land, were *negligently* made.    It proceeds upon the theory that the mere raising of the grade of the road by the County Commissioners, although it was done with due care, imposed upon them an obligation to provide and maintain adequate means of escape for the surface water which fell upon the plaintiff's land and that they were liable to him in damages for a failure to do so if his land were thereby injured.

County Commissioners in this State are under no such obligation.    It is one of their duties, except in those counties where their duties have been modified by the enactment of local laws, to keep the public roads in order and to grade and when necessary regrade them and incidentally to make such ditches and drains as their proper construction and maintenance and their protection from overflow of water may require. When they have discharged their duty in good faith and with due care and the improvements made are reasonable and necessary, if a private party has been thereby injured it is *damnum*

*absque injuria* and no right of action accrues to him.    *Tyson* v. *County Commissioners*, 28 Md. 510; *Walter* v. *County Commissioners*, 35 Md. 385.    In both of those cases the plaintiff ineffectually sought to recover damages for injuries caused by the County Commissioners repairing a public road in such manner as to obstruct the flow over it of water, from his abutting land, in the manner in which it had been accustomed for many years to flow.

In the recent case of *Guest* v. *The Commissioners of Church Hill*, 90 Md. 693, the subject of the powers and responsibilities of municipal corporations in dealing with surface water and drainage again came before us for consideration and, after reviewing earlier cases in this State and elsewhere, we then said "All of the authorities agree that municipal corporations having proper legislative authority for that purpose may from time to time at their discretion, change the grade of their streets and they will not be liable for incidental or consequential injury to abutting lands resulting therefrom whether arising from surface water or from the change in the elevation of the lot with reference to the bed of the street.    In such cases if the work be done with due care so as to avoid unnecessary injury to adjacent property, *and there be no invasion of such property* its owners must suffer the injury resulting from the work thus done to promote the public welfare.    *Mayor &c., of Cumberland* v. *Willison*, 50 Md. 147–8; *Kelly* v. *Mayor &c., of Baltimore*, 65 Md. 171; *O'Brien* v. *Belt R. R. Co.*, 74 Md. 373–4; *Mayor, &c., of Baltimore* v. *Cowen & Murray, Receivers*, 88 Md. 456."

In the still more recent case of *Cahill* v. *Baltimore City*, 93 Md. 238; *Guest* v. *The Commissioners of Church Hill*, was affirmed and its propositions enforced by further discussion of the subject.

The *Church Hill case* came up upon demurrer to certain counts of the declaration that did not allege *negligence* on the part of the commissioners in so changing the grade and structure of a street as to collect from a large part of the town quantities of water, mud and filth by diverting them from their

natural flow, and pour them in front of the plaintiff's lot in such manner that they could not escape without flowing in upon and over it. The counts demurred to were held to be good because the injury, therein set out, to the plaintiff's land amounted to an invasion of it and was in the nature of a trespass and also because the *diverting from their natural flow and collection in front of the plaintiff's lot of large quantities of water, mud and filth from other parts of the town* constituted a nuisance, and the defendant was therefore liable for an injury occasioned thereby irrespective of negligence in constructing the road.

The prayer now under consideration contemplates no such state of facts as existed in *Cahill's case* or the *Church Hill case.* It relates only to the obstruction of the "flow of surface water *from the plaintiff's land,*" caused by the raising of the grade of the road, incidental to its proper drainage and repair and unless that work was done negligently or carelessly by the commissioners they are not liable to the plaintiff for any injury incidentally caused thereby to his land by obstructing the flow of its surface water. The prayer does not require the jury to find that the work of the commissioners, in repairing the road and thereby so raising its bed as to obstruct the flow of surface water from the plaintiff's land, was *carelessly* or *negligently* done and is as we have already said for that reason defective.

As this was the only prayer granted which stated upon what grounds the plaintiff was entitled to recover and those grounds were erroneously stated in it, the judgment appealed from must be reversed; and as there is no evidence that the work in question was negligently or carelessly done no new trial will be granted.

> *Judgment reversed with costs without granting a new trial.*

(Decided December 3rd, 1903.)